Exhibit "P-1"

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA  [X] EEOC | 451-2008-02385 |

Texas Workforce Commission Civil Rights Division                                and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Robert L. Johnson | (210) 648-3176 | 07-11-1959 |

Street Address: 4830 Lakewood Drive, San Antonio, TX 78220

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| SAN ANTONIO STATE HOSPITAL | 201 - 500 | (210) 531-7300 |

Street Address: 6711 S. New Braunfels, San Antonio, TX 78223

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN
[ ] RETALIATION  [X] AGE  [ ] DISABILITY  [ ] OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 12-14-2007    Latest: 07-16-2008
[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

On or about December 14, 2007, my employment was terminated. On or about July 16, 2008, the grievance that I filed contesting the termination was dismissed and the termination upheld.

I was the only Black male working in my area. Hispanic females under the age 40, who violated workplace rules did not have their employment terminated.

I believe I have been discriminated against because of my national origin and sex, male, and my age in violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act of 1967, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Sep 30, 2008
Date / Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Exhibit "P-2"

EEOC Form 161 (2/08)                    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Robert L. Johnson<br>4830 Lakewood Drive<br>San Antonio, TX 78220 | From: | San Antonio Field Office<br>5410 Fredericksburg Rd<br>Suite 200<br>San Antonio, TX 78229 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 451-2008-02385 | Guillermo Zamora,<br>Enforcement Supervisor | (210) 281-7644 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_for_ Pedro Esquivel,
Field Director

10/29/08
(Date Mailed)

Enclosures(s)

cc: San Antonio State Hospital

Enclosure with EEOC
Form 161 (2/08)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before 7/1/02** – not 12/1/02 – in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**   --   **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

**IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.**

Exhibit "P-3"

THE LAW OFFICES OF VINCENT A. LAZARO
Attorney and Counselor at Law
The Historic Milam Building
115 E. Travis, Suite 706
San Antonio, Texas 78205

Vincent A. Lazaro, Esq.

San Antonio, Texas
Tel: (210) 224-2257
Fax: (210) 224-2227

**ORIGINAL VIA HAND-DELIVERY**
**FAXED TO (210) 531-8080**

December 10, 2007

Silvia A. Rodriguez, RNC
Nurse Administrator
TEXAS DEPARTMENT OF STATE HEALTH SERVICES
San Antonio State Hospital
6711 S. New Braunfels, Suite 100
San Antonio, Texas 78223-3006

       RE: Robert Johnson
          No. 44690

       SUBJ: Response to Written Notice of Cause –
           Dismissal Dated December 10, 2007

Dear Ms. Rodriguez:

  This document serves as Robert Johnson's written rebuttal to the Written Notice of Cause – Dismissal letter dated December 10, 2007. It is my understanding, based on an telephone conversation with Paul Mascot, Esq., that, in addition to this rebuttal, Mr. Johnson and I will have an opportunity to meet directly with you at a hearing scheduled for Thursday, December 13, 2007, at 10:00 AM.

  In reliance upon Mr. Mascot's representation, this rebuttal is not intended to serve as an exhaustive counter-point to every issue and concern raised in your December 10, 2007, letter. It will, however, address major concerns and points of objection regarding Mr. Johnson's performance as a SAN ANTONIO STATE HOSPITAL employee. As an general proposition, it remains my client's position that he has performed his job duties, has met all HHS standards for job performance, and has followed all job-related instructions from his supervisors in accordance with HHS HUMAN RESOURCES MANUAL, Chapter 4, B.

  As you are aware, Mr. Johnson, on May 16, 2007, filed a discrimination complaint against several SAN ANTONIO STATE HOSPITAL employees including yourself (Case No. 00070859) with the TEXAS HEALTH AND HUMAN SERVICES COMMISSION'S (THHSC) Civil Rights Office. A copy of a memorandum acknowledging THHSC's acceptance of Mr. Johnson's complaint is annexed hereto as Exhibit "1" and is incorporated by reference as if fully set forth herein. Notably, Mr. Johnson's complaint was filed during what eventually became a four month-long leave from his job–a leave that he was forced to undertake because of a history of reprisals and recriminations that have been directed against him by SAN ANTONIO STATE HOSPITAL employees.

  This, of course, raises an immediate concern about both the legitimacy and motivation underlying the current effort to terminate Mr. Johnson's employment. Because you are one of the individuals specifically named in the May 16, 2007, complaint filed with the Civil Rights Office, it is my belief that any current evaluation for possible disciplinary action involving you as anything more than a fact witness would be inherently unfair and

an abridgement of Mr. Johnson's due process rights. I am respectfully requesting that this matter be handled by an objective, impartial evaluator.

## Pertinent Employment History

Mr. Johnson is a 24-year employee with the SAN ANTONIO STATE HOSPITAL presently working as a Mental Health Worker Spec. I–a job grade he has occupied for approximately the last six years. Mr. Johnson has been assigned to his current station with the Adolescent Unit since approximately 2005.

As already noted above, on May 16, 2007, Mr. Johnson filed a complaint with the TEXAS HEALTH AND HUMAN SERVICES COMMISSION Civil Rights Office alleging race-based discrimination. The complaint identified Sylvia Rodriguez, Marie E. Valero, and Isidro C. Hernandez–all supervisors of Mr. Johnson–as having violated his civil rights. The *Memorandum* from Richard Webb (attached hereto as Exhibit "1") noted the following: "Sylvia Rodriguez, Marie E. Valero, and Isidro C. Hernandez, will be notified of the complaint and asked to respond to the allegation."

On December 7, 2007, Mr. Johnson approached his supervisor Isidro C. Hernandez and specifically requested reassignment to another unit. This request was based on Mr. Johnson's sincere belief that certain supervisors a created a hostile environment wherein practically anything he does is subject to undue criticism, severe scrutiny, and selective enforcement of policies.

On December 10, 2007, Mr. Johnson received a Written Notice of Cause – Dismissal letter from Sylvia A. Rodriguez.

## Rebuttal to Written Notice of Cause Letter

- **"Since you returned on September 10, 2007 you have shown no improvement concerning your level III."**

This generalization is denied in its entirety. It serves as concrete example of how Mr. Johnson's supervisors are attempting to terminate his employment by emphasizing any perceived wrongs or transgressions while intentionally overlooking any positive contributions he has made. Notably, for the period in question, no supervisor or any other individual in authority has cited Mr. Johnson for poor work performance. As a matter of fact, in the *Performance Evaluation* dated November 29, 2007, Mr. Johnson's supervisor makes several observations regarding work performance including, but not limited, to the following:

"... he knows his job well."

"... he has the necessary skills to perform his job responsibilities and duties on a competent level."

"He has been witnessed to skillfully de-escalate patient situations by using PMAB Verbal Interventions"

A copy of this *Performance Evaluation* is annexed hereto as Exhibit "2" and is incorporated by reference as if fully set forth herein. A cursory examination of *Performance Evaluation* suggests that Mr. Johnson's supervisors appear less interested in acknowledging any of his positive contributions or capabilities. The greatest difficulty enumerated by Mr. Johnson's supervisor seem to a general opinion that he tends to stand his ground and, consequently, tends to be outspoken when challenged.

- On September 29, 2007 you had been informed by the Spec. II Melinda Martinez to hold from letting the patients come into the center court area because staff was not ready to receive patients. You turned around and went to the practice court with no clients and sat to watch TV. You left the patients unattended and the Spec. II Melinda Martinez saw two patients going into other patients' room and two other patients in the hallway horse playing. You had to be informed of the situation before you came out to gather the patients.

Mr. Johnson denies the allegations contained herein and asserts that Spec. II Melinda Martinez has provided both an incomplete and inaccurate statement recounting the events that occurred on September 29, 2007. Whether this was done intentionally by Ms. Martinez remains to be determined. To the extent that Ms. Martinez's report is accepted as complete and accurate for the purposes of this rebuttal, I respectfully request a full evidentiary hearing with an opportunity to cross-examine Ms. Martinez about the specifics of this allegation.

It is my belief that this allegation is overplayed. Mr. Johnson was not watching TV as alleged by Ms. Martinez. Mr. Johnson was in area in the South Wing and was monitoring patients some of whom were in their individual rooms and some who were in the day area with Mr. Johnson. Mr. Johnson was in the day area where a TV located but, once again, was not casually overlooking his job responsibilities as is suggested by this allegation. A detailed explanation of these circumstances will be provided during the hearing.

- On December 06, 2007 Mr. Isidro Hernandez was informed of another situation in which the Spec. II Melinda Martinez on the unit had to ask you who was covering your area. Your response was that you left the door open and could still monitor the patients. You were informed by Melinda Martinez to please call the nurses office for any request you may need. The patients need to have staff monitor them at all times.

To the extent that this allegation is based upon information related directly by Mr. Hernandez, understand that this constitutes hearsay and would, therefore, be unacceptable in any court of law. To the extent that Ms. Martinez's report to Mr. Hernandez is accepted as complete and accurate for the purposes of this rebuttal, I respectfully request a full evidentiary hearing with an opportunity to cross-examine Ms. Martinez about the specifics of this allegation.

As further explanation, Mr. Johnson fully understands the need to monitor patients at all times. For the incident in question, Mr. Johnson was, in fact, monitoring patients and covering his area. A more detailed explanation of these circumstances will be provided during the hearing.

- One hour later you once again left your area and when you were asked by Melinda Martinez who was monitoring your patients you said "no one". She then informed you to use your unit phone when you need staff. You returned to the south wing and just stood at the door staring at Melinda Martinez and Mary Ramos in the nurses' station.

Mr. Johnson denies this allegation in its entirety. As already stated above, Mr. Johnson fully understands the responsibilities of his job including the need to monitor patients at all times. To the extent that Melinda Martinez and Mary Ramos are accusing Mr. Johnson of any threatening conduct, this too is vigorously denied.

- At 1:15 PM you were also requesting another break and were informed by Mary

> Ramos that the staff had been sent with patients for appointments.

It is my understanding that SAN ANTONIO STATE HOSPITAL staff are accorded a 15-minute break in the morning, a 30-minute break for lunch, and a 15-minute in the afternoon. Mr. Johnson was simply requesting his break.

- **At 2:00 PM you stated "well I can go to the bathroom" even though the staff were still dealing with patients who had been agitated you were relieved. Mary Ramos informed you to please return as soon as possible. When she instructed you to please to go your bathroom break you stated "You are something else you are a piece of work".**

This is an incomplete description of the events that occurred. Mr. Johnson had requested an opportunity to use the bathroom. According to my understanding, there is a particular bathroom that all staff uses and which Mr. Johnson intended to use as well. Ms. Ramos, in a misguided effort to assert her authority over him, attempted to deny Mr. Johnson the opportunity to use that bathroom and directed him, in much the same manner that a parent would direct a child, to use another bathroom.

Mr. Johnson is a grown man and does require any SAN ANTONIO STATE HOSPITAL employee to oversee his bathroom habits. Somewhat surprised by Ms. Ramos' overreaching, Mr. Johnson told her "You're like watching Comedy Capers—you're a real joke." In other words, Mr. Johnson was in disbelief that Ms. Ramos would actually attempt to assert authority over him by dictating which bathroom he could use. Frankly, it would be difficult to characterize any behavior such as this by any supervisor as anything but a joke.

To make matters worse, when Mr. Johnson opted to use the bathroom that all other staff members use, this apparently drew additional ire. Ms. Ramos, with great indignation, directed all other staff members in the area to "make sure he [Mr. Johnson] doesn't go any further." By these actions and in a very direct way, Mr. Johnson is being singled out since he is disallowed from using facilities that are readily available for all other staff members.

- **Several times when you had been redirected Mr. Alfred Garza, Elaine Dixon and Mary Ramos overhead you say "yes um I is a going". You repeated by saying "yes em yes em right away mam".**

Place yourself in a similar situation where everything you do is placed under scrutiny and where fundamental decisions for the most basic human needs including, but not limited to which bathroom you can use, are denied. Mr. Johnson has protested the fact that he continues to singled out and is working under a hostile environment.

- **You were very persistent in requesting a smoke break even though you were aware that there was no available staff. After ten minutes, you were given your smoke break.**

Once again, it is my understanding that all SAN ANTONIO STATE HOSPITAL employees are accorded morning and afternoon breaks. I remain confused how Mr. Johnson's request to take a break that is presumably available to every other SAN ANTONIO STATE HOSPITAL employee could be twisted into a deficient performance issue. Mr. Johnson was simply alerting pertinent staff of his intention to take his break to ensure necessary

coverage of patients during that 15-minute period.

- At 2:40 PM Mary Ramos found you in the nurses station charting and she asked you who was covering your area. You stated that Mr. Luis Jimenez was. Mr. Luis Jimenez is a new staff who was at this time currently not able to be on his own.

This allegation presents a factual impossibility. To wit: any "charting" would necessarily be tracked by computer and the last data entry date relevant to Mr. Johnson occurred on December 5, 2007. A copy of the *Patient Daily Functioning Checklist* is annexed hereto as Exhibit "3" and is incorporated by reference as if fully set forth herein. This rebuttal is further corroborated by the *Nursing Staff Assignments* sheet dated December 5, 2007. A copy of this document is annexed hereto as Exhibit "4" and is incorporated by reference as if fully set forth herein.

According to the *Patient Daily Functioning Checklist*, at 2:49 PM on December 5, 2007, Mr. Johnson was not assigned to either the south or north wing areas. Mr. Johnson was engaged in a "1:1" and, therefore, was not "covering an area." Furthermore and contrary to the assertion above, Mr. Johnson was not relieved by Luis Jimenez. He was relieved by Lawrence Romney. Mr. Romney has provided a statement that corroborates the fact that Mr. Johnson "told him [Romney] to take over his 1.1 patient." This directly contradicts the above allegation that Mr. Johnson asked Mr. Luis Jimenez to cover his area. A copy of this statement is annexed hereto as Exhibit "5" and is incorporated by reference as if fully set forth herein.

- On December 7, 2007 I received a call from Mr. Isidro Hernandez at 11:20 AM saying that you wanted to speak to me so that I could move you to another unit because you felt the "environment was hostile toward you" and that "you felt the staff was against you". At this time I asked Mr. Isidro Hernandez to send you to nursing services so that I could speak with you. I made a decision at this time to send you home because you were visibly upset and with the difficult situation on the unit where the patients had been very upset and required staffs full attention I felt you were unable to be therapeutic with this type of population. I informed you that I would meet with you on Monday December 10th at 8:00 AM in nursing service. Present at this meeting was Maria Ostrander Director of Nursing and Mr. Mathew McGuire Nurse Coordinator for the 7-3 shift.

As a point of information, Mr. Johnson was not assigned to any population on this day. He was assigned upstairs to patient Ricardo Flores for a "1:1". As it turns out, this is the only place in the entire unit that was not in an uproar that day. Any concerns about Mr. Johnson's inability to "be therapeutic" are negated by the statement provided by Elizabeth Hernandez. A copy of this statement is annexed hereto as Exhibit "6" and is incorporated by reference as if fully set forth herein. In pertinent part, Ms. Hernandez notes: "We had a good day with no problems from either of our assigned pts. Our day went well without any incident from our pts."

- Your responsibility as the Spec. 1 on the Adolescent Unit is to monitor the patients and maintain a safe environment. Your inability to follow directions and except [sic] feedback from your supervisors is a concern. This administration has made every effort to assist you with you poor job performance. At this point your attitude and lack of improvement has lead to

Sylvia Rodriguez
December 13, 2007
Page 6

---

this final disciplinary action.

Once again, it remains my position that Mr. Johnson has been singled out and that this most recent effort to blemish his employee performance is but a continuation of the reprisals and hostilities that have been directed against him for some time. The SAN ANTONIO STATE HOSPITAL should not lend currency to selective enforcement of policies. Nor should it minimize the overall positive performance that Mr. Johnson has exhibited over the course of the last 24 years.

To the extent that the San Antonio State Hospital places any credibility on the specious allegations included in your December 10, 2007, letter, I respectfully request a full evidentiary hearing so that all concerns can be addressed promptly and directly.

Should you require any additional information, please let me know at your earliest possibility convenience. Until then, I remain

                          Cordially,

                        VINCENT A. LAZARO, ESQ.